UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BENJAMIN JAMES CORNWELL**       **CIVIL ACTION**

**VERSUS**       **NO:**    **20-2982**

**LaSALLE CORRECTIONS MANAGEMENT, ET AL**       **SECTION: "L" (4)**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a *Spears* hearing to determine why suit was filed in this court and to submit proposed findings and recommendations for disposition pursuant **28 U.S.C. §636(b)(1)(B) and (C) § 1915A**, and **42 U.S.C. §1997e(c)(1) and (2)**. On January 13, 2021, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter*[1] and its progeny.

**I.**    **Background**

   **A.**   **The Complaint**

The Plaintiff, Benjamin James Cornwell, ("Cornwell") an inmate housed at Terrebonne Parish Criminal Justice Complex, ("TPCJC") located in Terrebonne, LA filed suit against LaSalle Corrections Management, Terrebonne Parish Criminal Justice Complex, TPCJC Medical Staff, and Catahoula Correctional Center alleging he was injured in an incident with guards while being transported from Catahoula Correctional Center to Terrebonne Parish at River Correctional Center. Rec. Doc. 1.

Cornwell alleges that on October 12, 2020, he sustained injuries while being transported from Catahoula Correction Center to TPCJC passenger in a small compact minivan used to

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of the Spears Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *See Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991); *see also Miorana v. Gusman*, No. 13-0143, 2013 WL 2404117 (E.D. La. May 31, 2013).

transport prisoners. He filed this lawsuit on October 26, 2020. Cornwell alleges that an 18-wheeler and another vehicle were involved in an incident directly in front of the transport van. While the van avoided the vehicle in front of it, it was rear ended while trying to break.

There were four other passengers being transported with Cornwell on the day of the accident, Dwayne Racine, Christopher Maloz, Brent Giorgano, Joshua Guidry. Cornwell alleges that none of the passengers were wearing seatbelts and that they were shackled by their hands and feet. He alleges that the van driver wrote down the names of the passengers, but they were not checked out for injuries by EMT's at the scene. Instead, they were told that they would be medically examined by TPCJC.

Cornwell alleges that they were seen by a nurse at TPCJC but was told that an x-ray was not necessary and that he was denied medical treatment. He complains that his back hurt and that he just had hip, femur, knee surgery a few months before. He alleges that he overheard the driver of the bus that hit them talking and admitting that he did not have a proper chauffer driver's license.

Cornwell alleges that as a result of the incident, he is seeking compensation for the pain and suffering and all medical expenses. Cornwell also alleges that he seeks compensation for medical malpractice for the improper handling of the treatment upon their return to TPCJC. Cornwell also seeks damages for defamation of character due to the way he was treated by TPCJC and "punitive consolation".

**B. The *Spears* Hearing**

On January 13, 2021, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter*, and its progeny, with the plaintiff, Terrence Cornwell, participating via telephone conference call. During this conference call, Cornwell testified that on October 12, 2020, he was involved in an accident in East Baton Rouge Parish. He alleges that his driver swerved and missed the incident ahead of them but was then struck from behind. He says that he overheard the driver of the vehicle that hit them admit that he did not have the proper licensing.

Cornwell testified that the bus driver never stopped to check on the inmates and Cornwell and others were forced to ride several hours to New Orleans on the floor. He further testified that upon arrival in New Orleans he was not brought to court, but rather had to ride several hours back to TPCJC in the same position. He testified that he was examined by a general practitioner at the jail. He alleges that he had just had surgery on his leg and believes that he reinjured his leg and shoulder. He testified that the doctor after examination concluded that he may have inflammation, but no diagnostic tests were conducted.

Cornwell testified that he filed suit against Catahoula Correction Center because the driver of the transport van was from that prison. He further testified that he filed suit against LaSalle Corrections because they own several of the prisons in the area and is the umbrella facility for the prisons. He believed that LaSalle Management is the parent company.

Cornwell testified that he made several sick call requests for his leg and his shoulder and believed that it may have been as many as fifteen (15) instances. He testified that he broke his femur in an unrelated accident and had hip surgery. Cornwell further testified that his shoulder pops out of the socket often and that he is going to the physical therapy for the surgery he had before the incident.

He testified that his left shoulder was injured during the incident when he was pushed into the grating in the van. As a result, he testified that he can no longer lift or put weight on the left shoulder. According to Cornwell, after the incident, the doctor did not check his left shoulder even though he complained and he received no further treatment, except for the ibuprofen for pain and Flexeril he was given at the initial visit. Cornwell also testified that he has been housed in a medical cell since his arrest.

Regarding his past medical treatment, Cornwell testified that he has had five back surgeries since he was young. He testified that he was on OxyContin, has experienced withdrawal symptoms, and has started hearing voices. He said that he tried to deal with the voices and was charged with self-mutilation. He additionally testified that he rolled off the second story of the dorm onto a table and hurt his leg.

The Court ordered that Cornwell be seen by a doctor for his left leg injury and left shoulder injury. Counsel for the defendants thereafter agreed to provide a report of the results to the court. The defendants complied with the Court's instruction.

## II. Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. Analysis

#### A. Claim Against LaSalle Corrections Management

Cornwell named LaSalle Corrections Management ("LSM") as defendants in this action. The Fifth Circuit has recognized that a private prison management company, like LSM, may be liable under § 1983 because they perform a public function and are subject to limitations imposed by the Eight amendment. *See Rosborough v. Mgmt. & Training Corp.,* 350 F.3d 459, 460-61 (5th Cir. 2003). The Court notes that Cornwell does not allege that the denial of medical care was purposeful as he was seen by a doctor and housed in the medical unit. He does suggest that he should have received additional treatment beyond the initial examination by the prison doctor. These allegations however are insufficient to state a claim for deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 107 (1976). Additionally, the allegations against LSM fail to allege that the defendants knew he faced a substantial risk of

5

harm and disregarded that risk by failing to take reasonable measures to abate it. Therefore, the claim against LaSalle Management should be dismissed.

### B. Terrebonne Parish Criminal Justice Complex (TPCJC), Catahoula Correction Center (CCC)

Terrebonne Parish Criminal Justice Complex ("TPCJC") and Catahoula Correction Center ("CCC") however, are not proper defendants. An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits. La. Civ. Code, Art. 24. To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person" as defined by the Louisiana Civil Code. In Louisiana, a juridical person is "an entity to which the law attributes personality, such as a corporation or partnership." *Id*.

In Louisiana, the responsibility for parish jails is divided, with the parish responsible for the jail's physical maintenance (La. Rev. Stat. § 15:702), and the sheriff charged with the duty to administer and operate the jail (La. Rev. Stat. § 15:704). The office of sheriff is a constitutionally created office in Louisiana, existing separately from the parish government. *Langley v. City of Monroe,* 582 So. 2d 367, 368 (La. Ct. App. 2d Cir. 1991). Thus, in Louisiana, jail facilities are not "legally empowered to do" anything independent of either parish officials or the parish sheriff. *Roberts v. Sewerage and Water Bd. Of New Orleans*, 634 So.2d 341, 347 (La. 1994). Consequently, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas v. Gusman*, 567 F.Supp. 2d 877, 892 (E.D. La. 2008). Consequently, the claims filed against TPCJC and CCC should be dismissed.

### C. Claim Against Medical Staff

Cornwell has named a lawsuit against medical staff. In addition to lacking the capacity to be sued, as required by Fed. R. Civ. P. 17(b), "medical staff" is an improper defendant because the claim must be filed against an actual identified person not a department. *See Carter v. Strain* No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009). Therefore, the claim against the Medical Staff should be dismissed.

## IV. Recommendation

It is therefore **RECOMMENDED** that Cornwell's §1983 claims against Terrebonne Parish Criminal Justice Complex, LaSalle Corrections Management, TPCJC Medical Staff, and Catahoula Correctional Center be **DISMISSED WITH PREJUDICE** for failure to state a claim.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 19th day of January 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.